Hillsborough
No. 78-279

DIANA PAQUETTE

v.

CONSTANCE ST. CLAIR *& a.*

May 23, 1979

█

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*E. Blake Redding* orally), for the plaintiff.

*Wescott, Millham & Dyer*, of Laconia (*Rodney N. Dyer* orally), for the defendants, Richard and Constance St. Clair.

LAMPRON, C.J.  This is an action that was brought to recover damages arising out of defendant's breach of a contractual agreement to appraise and sell certain antiques of the plaintiff. Trial before a Master (*Mayland H. Morse, Jr.*, Esq.) resulted in a verdict for the plaintiff in the sum of $2,500 plus interest from December 19, 1975, to December 19, 1977, and $750 in legal expenses *together with court costs*. The Superior Court (*Mullavey*, J.) approved the master's report and entered an order in accordance with the recommendations. Defendant's exceptions were reserved and transferred by *Loughlin*, C.J.

The plaintiff wanted to sell some of her antiques. The defendants, who were in the antique business, agreed to sell these antiques on a consignment basis. A written agreement was entered into and the terms included provisions that the defendant, Constance St. Clair, was "to appraise and sell on my [plaintiff's] approval the contents of my house at 454 Hanover Street; Manchester, New Hampshire. I [the plaintiff] will pay Constance St. Clair twenty-five percent of the amount received on above contents." The plaintiff alleged that defendant breached the contract because she untimely paid plaintiff for the articles that were sold, that she sold certain articles below the agreed-upon price, and that she wrongfully retained some of the unsold articles. In essence, the master agreed and recommended a verdict of $2,500. The defendant argues that the damages awarded are inappropriate.

The defendant sold some of these antiques, and, according to the interrogatories, made payments to Mrs. Paquette totalling $2,172.75, after deducting the twenty-five percent commission. The master found that these payments were timely made. Another list of items that were sold indicated gross sales of $2,786 of which claimant's commission totalled $695.50. The amount owed to the plaintiff, $2,089.50, was found to be wrongfully withheld from the plaintiff for approximately two years. The master presumed that these items were sold before December 19, 1975, when the defendants were notified by registered mail to return all property of the plaintiff which they held on consignment. Because this sum was not paid to the plaintiff until the day of the hearing, December 19, 1977, the master properly included two years of interest at the approximate legal rate of $250 in the verdict.

The master further found that the defendants verbally suggested a range of values for each of the many items taken by them and that they agreed to provide the plaintiff an appraisal of the items as a condition precedent to sale, which they failed to do. Disagreement thus resulted because the defendants sold certain items at prices below the amounts the plaintiff was prepared to accept. Plaintiff's third and fourth requests for findings of fact asked the master to award damages of $1,895 and $541.50, for a total of $2,436.50, to compensate the plaintiff for "the difference between the appraised value and the selling price, less 25 percent commission, plus interest and costs," of these additional articles sold by the defendants. The master granted these requests in part. The defendants incorrectly contend that this action of the master is nullified by his denial of plaintiff's second request.

The latter was a request that defendants breached their contract by selling those items "below the appraisal value without the permission

of the Plaintiff." The denial of this request is consonant with a finding in the master's report that seeking the prior approval of the plaintiff before the defendants made a sale was not a practical method of doing business. This does not render incompatible the master's granting in part the damages which would compensate plaintiff for the loss she incurred as the result of these below value sales made by the defendants. RSA 382–A:1–106(1); R. NORDSTROM, LAW OF SALES § 138(1) (1970); *see Harold Klein & Co., Inc. v. Lopardo*, 113 N.H. 400, 401, 308 A.2d 538, 539 (1973).

The total compensatory damages sought by the plaintiff under her third and fourth requests for findings of fact, if fully granted, would amount to $2,436.50. Together with the compensatory interest of $250, these damages would total $2,686.50. The plaintiff has no duty to point out the exact method by which the trial court reached the exact amount of the verdict. *Clover Cutting Die Co., Inc. v. Sam Smith Shoe Corp.*, 96 N.H. 491, 492, 79 A.2d 8, 9 (1951). On the record before us, which does not include a transcript of the evidence presented, we can assume that the verdict was based on competent evidence and that it is in accordance with the law. *Trustees of Lexington Realty Trust v. City of Concord*, 115 N.H. 131, 132, 336 A.2d 591, 592 (1975). We therefore reject defendants' argument that the damages awarded were penal or punitive in nature. *See Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 289, A.2d 66 (1972).

The trial court properly found, on the record before us, that defendants' unwarranted conduct in wrongfully retaining plaintiff's property and their "arrogant disregard of plaintiff's rights" constituted bad faith. The court also properly found that the "unprincipled advantage taken by them of the plaintiff . . . [has] caused the plaintiff unnecessary legal expenses for which the defendants should be held responsible." We therefore sustain the award of $750 toward plaintiff's legal expenses. *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977). We refuse to grant relief under RSA 490:14-a (Supp. 1977) under the circumstances of this case. *See R. J. Berke & Co., Inc. v. J. P. Griffin, Inc.*, 118 N.H. 449, 452, 388 A.2d 1260, 1262 (1978).

*Exceptions overruled.*

All concurred.