Grafton
No. 83-491

IDA E. ARCHER

v.

PHYLLIS M. DOW

February 6, 1985

*Mullaly & Trunzo*, of Lebanon (*Thomas H. Trunzo, Jr.*, on the brief and orally), for the plaintiff.

*Castello & Bruno P.A.*, of Woodsville (*Kevin R. Bruno* on the brief and orally), for the defendant.

KING, C.J. The plaintiff, Ida E. Archer, appeals a Superior Court (*Dunn,* J.) order denying her petition to set aside the conveyance of her house and land to the defendant, Phyllis Dow. The plaintiff claims that the defendant abused a confidential relationship with the plaintiff and thereby unduly influenced the plaintiff in order to obtain a deed conveying real property to the defendant. We affirm the decision denying the plaintiff's petition to set aside the conveyance, but remand for a modification of the equitable relief.

In September of 1982, the plaintiff, an eighty-two-year-old widow, filed a petition to set aside a conveyance of land and buildings which she had previously made to the defendant. At the same time, the plaintiff commenced an action at law against the defendant seeking money damages as a result of an alleged misappropriation by the defendant of monies in two joint bank accounts set up by the plaintiff.

On October 28, 1983, following a hearing of these two consolidated cases before a Master (*Walter L. Murphy*, Esq.), the superior court

denied the plaintiff's petition to set aside the conveyance, but ordered that the plaintiff be given a life estate in the premises. The superior court also ordered a judgment for the plaintiff in the amount of $4,576.88 plus interest and costs. The judgment for $4,576.88 represents the total amount deposited in the two joint bank accounts and withdrawn by the defendant without the plaintiff's approval.

The plaintiff and the defendant have known each other for approximately 17 years. At the hearing before the master, the defendant further stated that she was the plaintiff's best friend and that she shared a mother-daughter relationship with the plaintiff. The defendant testified that she held a position of trust and confidence with the plaintiff and that the plaintiff depended solely upon her.

During the course of their relationship, the defendant visited the plaintiff on Fridays, took the plaintiff shopping by motor vehicle, and prepared the checks to pay the plaintiff's bills. As a matter of convenience to the plaintiff, joint checking and savings accounts were set up with the defendant so that deposits of the plaintiff's income from her social security and railroad widow's pension could be made by the defendant.

On April 24, 1982, the plaintiff signed a deed conveying title to her house and land in the town of Orford to the defendant. The house had been the plaintiff's home for more than forty years. No monetary consideration was paid by the defendant for this transfer.

An attorney hired by the defendant drafted the deed. The attorney had previously represented the defendant, but had never dealt with the plaintiff. The only meeting between the attorney and the plaintiff occurred on April 24, 1982, when he spent about fifteen minutes with her prior to her execution of the deed.

The attorney stated at the hearing that he had represented the defendant when he prepared the deed. No evidence was presented indicating that the attorney had either explained the nature of his representation to the plaintiff, or suggested that the plaintiff obtain independent counsel. The attorney did not indicate whether he had inquired about the plaintiff's ability to hear or to read, although testimony was offered by the plaintiff and Ruth Davis that the plaintiff does not read or hear well. At the hearing before the master, the attorney stated that the plaintiff had been satisfied with the deed and had understood its contents. The plaintiff testified, however, that the house was still hers and that she had never conveyed it to the defendant.

In August of 1982, the plaintiff, due to her declining health, became unable to cook or to bathe herself. On August 29, 1982, the

plaintiff left her home in Orford and moved into Ruth Davis' house, where she currently resides and pays for her room and board. Previously Ruth Davis had performed cleaning services for the plaintiff and has known her for about six years.

Upon learning from a third party that the plaintiff was no longer residing in the house, the defendant placed a padlock on the door of the house on August 30, 1982. Although the defendant later testified that she padlocked the house in order to protect the premises, the door of the house had already been secured with a lock. Further, the defendant did not give the plaintiff a key to the padlock when she placed it on the door.

On August 31, 1982, the defendant, without the plaintiff's permission, withdrew all of the money from one of the plaintiff's bank accounts and recorded the deed to the house. Three days later the defendant withdrew all of the funds from the plaintiff's second bank account, again without the plaintiff's consent or knowledge. The defendant acknowledged at the hearing that all of the funds in those two accounts originated from the plaintiff's social security and widow's pension checks, and that none of the money belonged to the defendant.

The plaintiff objects to the master's finding that the plaintiff was not unduly influenced. In order to review this finding, we must examine the record. Unfortunately, the plaintiff's testimony at the hearing before the master on October 12, 1983, eighteen months after the deed was executed, was brief and largely incoherent. As a result, there is no direct testimony by the plaintiff concerning the facts and circumstances leading to her execution of the deed conveying title in her house and land to the defendant. Most of the testimony relied upon by the master to reach his findings was, of necessity, the direct testimony of the defendant, an interested party, and the attorney whom the defendant had hired to prepare the deed.

■ Given the nature of the record in this case, findings of fact in favor of the defendant should be scrutinized with particular care. There are deficiencies presented by the record in this case; however, we will uphold a master's findings if they can reasonably be made based upon all of the evidence. *Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980). In the present case it is necessary to examine several interdependent findings by the master in order to evaluate his finding that the defendant did not exert undue influence over the plaintiff.

■ The master's finding that a confidential relationship existed between the plaintiff and the defendant was amply supported by the record. A confidential relationship exists if there is a "personal rela-

tionship of such a character that the transferor is justified in believing that the transferee will act in his interest." *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976) (quoting *Kachanian v. Kachanian*, 100 N.H. 135, 137, 121 A.2d 566, 568 (1956)). The record indicates that the plaintiff was dependent upon the defendant for transportation, banking services, the preparation of checks and the payment of bills. This evidence adequately established the existence of a relationship which would justify the plaintiff in believing that the defendant would act in her best interest. *Cornwell v. Cornwell*, *supra* at 209, 356 A.2d at 686.

The master ruled that the defendant, as beneficiary acting in a "fiduciary capacity," had the burden of proving an absence of undue influence. This ruling was based upon the inference of undue influence which arises in cases in which the beneficiary of a transfer holds a position of trust and confidence with the party making the transfer. *Edgerly v. Edgerly*, 73 N.H. 407, 408–09, 62 A. 716, 717 (1905). We hold this ruling to be correct as a matter of law.

The master apparently found that the defendant had met her burden of proving an absence of undue influence, because his report states that the defendant "exerted no undue influence over the plaintiff in the execution of the deed." As a result of the plaintiff's inability to testify, the master had to rely upon the testimony of other interested parties in order to discover the circumstances surrounding the execution of the deed. Since the testimony relied upon supports the master's finding, we will not declare the finding of no undue influence to be erroneous.

Relying upon "the facts and circumstances surrounding the conveyance," the master found, despite testimony to the contrary, that the parties intended to grant the plaintiff a life interest in the property. Given the one-sided nature of the testimony, the master's consideration of the circumstances surrounding the transaction was justified. Circumstantial evidence indicated that the plaintiff continued living in the house after the execution of the deed and did not pay rent to the defendant. Also the defendant did not record the deed until after the plaintiff vacated the premises. Since the master's finding could reasonably have been made on the basis of the record presented, we are obliged to let it stand. *See Hynes v. Whitehouse*, 120 N.H. 417, 420, 415 A.2d 876, 878 (1980).

The lower court invoked its equity powers to reform the deed to reserve the plaintiff's life estate as each party had intended. The court had undoubted equity power to order this relief. "It is old and well-established law that equity, at the instance of a grantor . . . will

reform a voluntary conveyance, where, by mistake of law or fact, a larger estate or more land has been granted than was intended to be conveyed; and it is immaterial that the grantee is cognizant of the mistake." *Tyler v. Larson*, 106 Cal. App. 2d 317, 319, 235 P.2d 39, 41 (1951); RESTATEMENT OF RESTITUTION § 49 (1937).

In view of the defendant's admission that the money withdrawn from the plaintiff's bank accounts did not belong to the defendant, and the master's finding that her relationship with the plaintiff did not entitle her to compensation, we direct the court on remand to hold a hearing in order to consider a grant of reasonable attorney's fees to the plaintiff.

■ This court has held that an award of attorney's fees is appropriate "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention . . . ." *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977). In *Harkeem* we noted that judicial exceptions to the general rule that litigants pay their own attorney's fees are flexible and not absolute. *Id.* at 690, 377 A.2d at 619. We then extended the ex¡sting "bad faith" exception to include cases in which a party's wrongful conduct caused another party to institute a lawsuit in order to protect a clearly defined right. *Id.*

■ In *Paquette v. St. Clair*, 119 N.H. 404, 407, 402 A.2d 182, 184 (1979), we held that the "defendants' unwarranted conduct in wrongfully retaining plaintiff's property and their 'arrogant disregard of plaintiff's rights' constituted bad faith." This bad faith formed a proper basis for an award of attorney's fees against the defendants in *Paquette*. Likewise, in this case the defendant's conduct in wrongfully withdrawing and retaining the funds from the plaintiff's bank accounts forced the plaintiff to institute a lawsuit to recover those monies. The defendant's actions were particularly wrongful because the defendant held a position of trust and confidence with the plaintiff. The record presents ample proof of the defendant's bad faith and supports an award of attorney's fees to the plaintiff.

We remand this case to the superior court with directions that it hold a hearing and exercise its equitable powers to protect the plaintiff's life interest, and assess attorney's fees for the legal proceedings to date.

*Affirmed and remanded for further relief consistent with this opinion.*

All concurred.