Carroll County Probate Court
No. 96-735

## IN RE ESTATE OF MADELINE M. CASS
## IN RE CASS FAMILY TRUST

October 5, 1998

*Sanders & McDermott, P.L.L.C.*, of Hampton (*Edwinna C. Vanderzanden* and *Patricia M. Weathersby* on the brief, and *Ms. Vanderzanden* orally), for the petitioner, Priscilla Cass Hundley.

*Law Office of Leslie H. Johnson*, of Center Sandwich (*Leslie H. Johnson* and *Caroline B. Chambers* on the brief, and *Ms. Chambers* orally), for the respondent, Gilbert Cass, as trustee of the Cass Family Trust.

*Melendy and Lee, P.A.*, of Conway, for the respondent, Gilbert Cass, as executor of the Estate of Madeline M. Cass, filed no brief.

BROCK, C.J. The respondent, Gilbert Cass, trustee of the Cass Family Trust, appeals a decision of the Carroll County Probate Court (*O'Neill*, J.). He contends that the court erred in quashing a deposition, failing to invite him to fully participate in the trial as a *pro se* litigant, and imposing a constructive trust upon property that the testator, Madeline M. Cass, bequeathed to him. We affirm.

The record reveals the following facts. On September 19, 1983, John W. Cass and Madeline M. Cass executed the Cass Family Trust. They named themselves co-trustees of the trust and named the respondent, their son, as the successor trustee. The beneficiaries of the trust included John and Madeline Cass, the original trustees; their adult children, including the respondent and the petitioner, Priscilla Cass Hundley; and their eight minor grandchildren. John and Madeline Cass retained the power to deal with the trust property, which included property on Crystal Lake in the town of Eaton (lake property), as if they were the sole and absolute owners of the trust property. The terms of the trust enabled the original trustees to revoke, terminate, alter, or amend the trust without consent or approval. Any trustee could expend the trust property for the benefit of the original trustees. The trust, however, restricted the sale of real estate within the trust for ten years after the original trustees' deaths, and required the proceeds of any sale to be combined with the other trust property, divided equally, and held in trust for the support and maintenance of the surviving beneficiaries.

In 1989, after John Cass' death, Madeline Cass became the sole trustee. Although the respondent was not appointed as trustee in

accordance with the terms of the trust, he acted as a co-trustee. In 1990, Madeline Cass suffered a stroke and entered a nursing facility. In January 1991, Madeline Cass granted the respondent a written power of attorney as to her personal business and her health care.

On March 13, 1991, Attorney William Paine II assisted Madeline Cass in executing a quitclaim deed transferring the lake property from the trust to the respondent. Although he recommended to the respondent that the respondent sign a mortgage to the trust for the property, the respondent never gave the trust a mortgage or any other consideration for the property. At the respondent's request, Attorney Paine never discussed the conveyance with the respondent's siblings. Although the respondent retained the quitclaim deed, it was never recorded. The respondent, however, testified that he believed that Madeline Cass expected him to keep the lake property, maintain it, and allow his siblings to freely use it as if it had remained in the trust. In September 1992, Attorney Paine withdrew from representing Madeline Cass because he believed he could not carry out her wishes while she was subject to the competing influences of her family members.

In October 1992, Attorney Fay Melendy assisted Madeline Cass in executing a warranty deed for the lake property to herself individually, and a codicil to her will leaving the lake property to the respondent. Attorney Melendy testified that Madeline Cass told her that she wanted to leave the property to the respondent because she thought "that [the respondent] was in the best position to care for the property . . . that [the respondent] would keep the property in the family and . . . that he would always make the property available to other family members." Madeline Cass' companion, Myrtle McKay, also testified that Madeline Cass had represented to her that the respondent cared for and paid the expenses associated with the lake property, and that Madeline believed the respondent should have the property. Contrary to Madeline Cass' belief, however, evidence showed that the respondent paid the property expenses out of trust funds.

Upon Madeline Cass' death in June 1993, the respondent became the sole trustee of the Cass Family Trust. Subsequently, the petitioner asked the probate court, *inter alia*, to set aside the transfer of the lake property from the trust, or to impose a constructive trust on the property, and to remove the respondent as trustee. Additionally, the petitioner filed several pretrial motions. In June 1995, the probate court granted the petitioner's motion to quash a deposition after finding that the respondent failed to provide reasonable notice. *See* PROB. CT. R. 10; SUPER. CT. R. 38.

In August 1996, the probate court ruled that a confidential relationship existed between the respondent and Madeline Cass, that the respondent used this relationship to gain ownership of the lake property, and that he breached his fiduciary duties as a trustee. Although the court concluded that the trust permitted the transfer of the lake property from the trust to Madeline Cass, the court imposed a constructive trust on the lake property and removed the respondent as trustee of the Cass Family Trust. Subsequently, the court denied the respondent's motion for reconsideration, granted the petitioner's motion for clarification, and ordered the respondent to provide an accounting to the petitioner.

On appeal, the respondent first argues that the petitioner failed to prove by clear and convincing evidence the elements necessary for imposing a constructive trust. We disagree. "We review sufficiency of the evidence claims as a matter of law," *Salisbury v. Lowe*, 140 N.H. 82, 83, 663 A.2d 611, 612 (1995), and "uphold the findings and rulings of the probate court unless unsupported by the evidence or clearly erroneous as a matter of law," *In re Estate of Washburn*, 141 N.H. 658, 659, 690 A.2d 1024, 1026 (1997). "We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *Id.*

■ No rigid requirements exist for imposing a constructive trust. *Clooney v. Clooney*, 118 N.H. 754, 757, 394 A.2d 313, 316 (1978). A constructive trust may be imposed when clear and convincing evidence shows that a confidential relationship existed between two people, that one of them transferred property to the other, and that the person receiving the property would be unjustly enriched by retaining the property, regardless of whether the person obtained the property honestly. *Lamkin v. Hill*, 120 N.H. 547, 551, 419 A.2d 1077, 1080 (1980); *see Salisbury*, 140 N.H. at 83, 663 A.2d at 612; RESTATEMENT (SECOND) OF TRUSTS § 73 comment *b* at 190 (1959). A confidential relationship exists if there is evidence of a family relationship in which one person justifiably believes that the other will act in his or her interest. *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976); *Clooney*, 118 N.H. at 757, 394 A.2d at 316. A person may be unjustly enriched if he or she obtains title to property by fraud, duress, or undue influence, or violates a duty that arises out of a fiduciary relation to another. 5 A. SCOTT & W. FRATCHER, THE LAW OF TRUSTS § 462.2, at 313 (4th ed. 1989).

In this case, the parties do not dispute that Madeline Cass bequeathed the lake property to the respondent and that he and

Madeline Cass shared a confidential relationship. Nor do they dispute that the confidential relationship developed during the fall of 1990 when the respondent acted as a co-trustee of the Cass Family Trust and gained control of Madeline Cass' personal business and health care via durable powers of attorney. The respondent, however, argues that the probate court erred in finding that during the existence of the confidential relationship he exerted undue influence over Madeline Cass to facilitate the transfer of the lake property. We find the respondent's argument unpersuasive.

■■ Whether undue influence exists is a question of fact to be determined based upon the surrounding facts and circumstances. *See Archer v. Dow*, 126 N.H. 24, 28, 489 A.2d 574, 578 (1985); 7 C. DEGRANDPRE, NEW HAMPSHIRE PRACTICE, WILLS, TRUSTS AND GIFTS § 8-9, at 77 (2d ed. 1997). Generally, a court considers "all the circumstances surrounding a disposition, including the relationship between the parties, the physical and mental condition of the donor, the reasonableness and nature of the disposition, and the personalities of the parties." 25 AM. JUR. 2D *Duress and Undue Influence* § 31, at 545 (1996). The influence that a donee exerts over a donor must amount to force or coercion that alters the donor's will and must be more than the mere influence of affection. *See Bartis v. Bartis*, 107 N.H. 34, 37, 216 A.2d 784, 786 (1966). In cases where the donee acts in a fiduciary capacity to the donor, the donee has the burden of proving an absence of undue influence. *Archer*, 126 N.H. at 28, 489 A.2d at 577.

The record supports the probate court's finding that the respondent exerted undue influence over Madeline Cass. Evidence showed that the respondent gave Madeline Cass incorrect information about the maintenance and value of the lake property and about the trust's assets before she transferred the lake property out of the trust. Additionally, the probate court heard testimony that the respondent handled all of Madeline Cass' financial affairs and consulted with her attorneys on complex legal issues, as well as testimony regarding Madeline Cass' health problems, her inability to read at times, and her memory loss.

■ Several witnesses, including the petitioner and McKay, Madeline Cass' companion, testified that Madeline Cass relied upon the respondent more than anyone else, including his siblings, and that she avoided discussions about her financial matters with anyone other than the respondent. Two attorneys who had represented Madeline Cass regarding the trust and the lake property testified that she was not capable of understanding financial or legal concepts

at, or before, the time that she transferred the lake property out of the trust and that she relied on the respondent for all of her financial decisions. Based upon this testimony and other evidence in the record, we conclude that the probate court did not err in determining that the petitioner submitted clear and convincing evidence of undue influence.

■ We next address the respondent's argument that he was not unjustly enriched because the lake property is appropriate compensation for the work he performed as a trustee of the Cass Family Trust. The probate court did not explicitly find that the respondent would be unjustly enriched; however, the record reveals clear and convincing evidence that he would be unjustly enriched by retaining sole ownership of the lake property. Although the trust contains a clause allowing the trustees to fix reasonable compensation for themselves, the record contains insufficient evidence to support a conclusion that the lake property is reasonable compensation for the respondent's actions as trustee.

The respondent also argues that he would not be unjustly enriched by receiving the lake property because Madeline Cass had consistently expressed her intent during the last years of her life to bequeath the property to the respondent. The respondent contends that Madeline Cass' intent, as expressed in the will codicil, should be respected and enforced, and that the probate court erred in ordering a constructive trust because it ignored Madeline Cass' intent as the testator. We find the respondent's argument unpersuasive.

The respondent argues that Madeline Cass' intent, as expressed in the codicil, should be respected because she unambiguously expressed her intent, she was "perfectly capable of exercising free thought and free agency as to her affairs," and she bequeathed the lake property to him just as other parents have traditionally bequeathed property to their children. Although Madeline Cass may have been capable of exercising her free will, we have already concluded that Madeline Cass did not exercise her free will when she transferred the lake property out of the trust; rather, Madeline Cass transferred it as a result of the respondent's undue influence over her.

Moreover, witnesses, including the petitioner and McKay, testified that although Madeline Cass intended to transfer the property to the respondent, the reasons that she advanced for the transfer were different than those alleged by the respondent. Specifically, the witnesses testified that Madeline Cass transferred the lake property

because she erroneously believed that the respondent maintained the lake property at his own expense and that fairness dictated that he should get the property. The witnesses further testified that Madeline Cass could not comprehend complex legal or financial issues, that she left the management of her affairs up to the respondent, and that the transfer of the property "was something that she worked out between herself and [the respondent] to care for the property."

Furthermore, the attorneys who assisted Madeline Cass in transferring the property testified that she wanted the lake property to be available for all of her children and that she wanted to treat all of her children equally. Attorney Melendy testified that Madeline Cass wanted the lake property transferred out of the trust because she wanted to ensure that it would remain available for as long as possible for the use and enjoyment of all family members, not just for the respondent's use and enjoyment, and because she "wanted it to go to [the respondent] only after her death so that if anything happened to [him] between the time of any conveyance and her own death, that it would definitely go to the remaining siblings." Although Attorney Melendy agreed that other legal means could have been used to accomplish Madeline Cass' goals, Attorney Melendy testified that she did not discuss those options with Madeline Cass. Based upon this testimony and our review of the record, we conclude that the probate court did not err in imposing a constructive trust on the lake property.

The respondent next argues that the probate court denied him an opportunity, as a *pro se* litigant, to participate in the proceedings by failing to offer him an opportunity to examine the witnesses and by addressing him only twice during the trial. The petitioner contends, however, that the respondent failed to preserve this issue for appellate review. Our review of the record reveals that the respondent failed to raise this argument below. Accordingly, the probate court did not rule on this issue of law, and we hold that it was not preserved for appellate review. *In re Estate of Washburn*, 141 N.H. at 662, 690 A.2d at 1028.

We next address the respondent's argument that the probate court erred as a matter of law by excluding a deposition for failure to provide reasonable notice as required by RSA 517:4 (1997) and Probate Court Rule 10, which incorporates Superior Court Rule 38. Superior Court Rule 38 requires that notice of a deposition be served at least three days prior to the day on which the deposition

is to be taken, "exclusive of the day of service and the day of caption." In this case, the petitioner received notice at 4:02 p.m. on May 23, 1995, for a deposition scheduled at 10:00 a.m. on May 25, 1995. This notice failed to meet the requirements established in Superior Court Rule 38; thus, the probate court properly excluded the deposition from evidence. Moreover, the probate court extended the discovery deadline to allow the respondent to provide proper service for another deposition.

After further review of the record, we conclude that the parties' remaining arguments are without merit and warrant no further discussion. *See, e.g., Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.