**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0717, <u>In re Alice Stedman 1989 Trust 2013 Restatement</u>, the court on November 10, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). Accordingly, the petitioners' motion for assignment to a 3JX panel is moot. We affirm.

The respondent, Claire Donahue (daughter), Trustee of the Alice Stedman 1989 Trust, appeals an order of the Circuit Court (<u>Cassavechia</u>, J.), in favor of the petitioners, Stanley Stedman (son) and Tammy Soper, declaring that a purported "restatement" of the trust by the settlor, Alice Stedman (mother), in 2013, was the product of undue influence. She contends that the trial court erred by: (1) ruling that she had the burden to establish the absence of undue influence and finding that she failed to do so; and (2) applying an incorrect standard of proof.

We first address whether the trial court erred by ruling that the daughter had the burden to establish the absence of undue influence. Whether undue influence exists is a question of fact to be determined based upon the surrounding facts and circumstances. <u>In re Estate of Cass</u>, 143 N.H. 57, 61 (1998). "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567–A:4 (2007). Consequently, we will not disturb the trial court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. <u>In re Estate of Couture</u>, 166 N.H. 101, 105 (2014).

We defer to the judgment of the trial court to resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given to testimony, recognizing that, as the trier of fact, it is in the best position to measure the persuasiveness and credibility of evidence. <u>In re Guardianship of E.L.</u>, 154 N.H. 292, 296 (2006). The trial court may accept or reject, in whole or in part, whatever evidence was presented. <u>Id</u>. Indeed, the trial court is free to reject even uncontested testimony. <u>In re Guardianship of Luong</u>, 157 N.H. 429, 439 (2008). Thus, we do not reweigh the evidence to determine whether we would have ruled differently. <u>Guardianship of E.L.</u>, 154 N.H. at 296. Rather, we review the record to determine if the trial court's findings could be reasonably made given the testimony and the evidence before it. <u>Id</u>.

To support a finding of undue influence, the influence that a donee exerts over a donor must amount to force or coercion that alters the donor's will and must be more than the mere influence of affection. Estate of Cass, 143 N.H. at 61. Among the factors that the trial court considers when determining the existence of undue influence are: the relationship between the parties, the physical and mental condition of the donor, the reasonableness and nature of the disposition, and the personalities of the parties. Id.

When a donee acts in a confidential or fiduciary capacity to the donor, the donee has the burden of proving an absence of undue influence. Id. at 60-61. A confidential relationship exists if there is a personal relationship that justifies the donor in believing that the donee will act in her interest. Archer v. Dow, 126 N.H. 24, 27-28 (1985). When the donor is dependent upon the donee for transportation, banking, and payment of bills, a confidential relationship exists. Id. at 28.

In this case, the daughter argues that, "[a]s a matter of law, the petitioners did not meet their initial burden of showing 'substantial evidence' of undue influence." (Capitalization omitted.) However, the daughter acknowledged to the trial court that "she ha[d] the burden of persuasion to demonstrate that the [restatement] was duly executed." Moreover, in her motion for reconsideration, she conceded that "the close confidential relationship between [her] and [the mother]" created a "rebuttable presumption that [she] can overcome" that there was "undue influence." Accordingly, we conclude that the daughter waived her argument that she did not bear the burden of proof under the circumstances of the case. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (stating parties may not have judicial review of issues they did not raise in trial court).

The daughter complains that "a child who was in any way depended upon by . . . her elderly parent [ ] will have to prove absence of undue influence in every case." However, the trial court noted, and the daughter did not contest, that she did not assert that her status as the mother's child should defeat the existence of a confidential relationship. See Bean, 151 N.H. at 250. To the extent that the daughter argues that the trial court violated the mother's "fundamental freedom of testation and basic privacy rights" under the New Hampshire constitution, the record does not establish that she made this argument to the trial court. See id.

We next address whether the trial court erred in finding that the daughter failed to meet her burden to show the absence of undue influence. The daughter contends that "[t]his finding is based purely on speculation." To the contrary, we conclude that it was properly based upon the trial court's evaluation of the evidence and assessment of the parties' credibility.

The trial court found that: (1) the mother's "relative isolation, extremely weakened physical state, uncertain mentation, and broken spirit," due to the untimely death of her favorite grandson in her home, "rendered her susceptible to

2

[the daughter's] influence during at least the last month of her life, if not earlier"; (2) the mother's "long-held estate plan was rewritten nineteen days before her death . . . in [relative] secrecy"; and (3) disinterested witnesses who knew the mother well were "surprised" by her new estate plan. Furthermore, we note that the daughter testified that she took over management of the mother's finances, pursuant to a power of attorney, two weeks before the mother executed the restatement.

The daughter argues that "[g]iven the time of year, geography, and her medical issues, [the mother] had, as a matter of law, a healthy and appropriate amount of contact with the outside world," and that "[t]here was absolutely no evidence that [the daughter] ever interfered with [the mother's] ability to receive . . . visitors during the final months of her life." However, although there was testimony that the mother had some visitors during her last months, there was also testimony that the recreational vehicle (RV) park, in which she and the daughter lived, was closed for the winter, the son was in Florida, the mother had difficulty placing phone calls, and the mother could not leave the house without assistance. Accordingly, we cannot conclude that the trial court's finding – that, by the time she executed the restatement, the mother was "to a large extent housebound and relatively isolated from everyone but [the daughter] and various paid care providers" – was unsupported by the evidence. See Estate of Couture, 166 N.H. at 105.

The daughter argues that the mother's mentation was not uncertain because some medical records state that "she was oriented and able to make her own medical decisions throughout the relevant time period, and that as of [one week prior to executing the restatement], she had recovered from the hallucination episode." The trial court, however, observed that the medical evidence regarding the decline in the mother's cognitive abilities was, "even at best, contradictory."

The court determined that the records from the visiting nurse and home health agencies (VNA), which saw the mother regularly during the period prior to her execution of the restatement, presented the "most accurate picture" of her mental health. The daughter complains that the trial court elevated "selected elements of the VNA records . . . over the live testimony of [the mother's] primary care physician." However, the trial court's decision was supported by the fact that, during the months immediately preceding the restatement's execution, the VNA staff saw the mother more frequently than her physician did. We note that the daughter does not challenge the admissibility of the VNA records. The trial court was well within the bounds of its discretion to assign greater weight to the VNA records than it did to the physician's testimony. See Guardianship of E.L., 154 N.H. at 296.

The VNA records described the mother as "forgetful" and exhibiting "impaired decision-making." The trial court placed "particular importance" upon

3

the fact that, approximately three weeks before executing the restatement, the mother was hospitalized for a fall, resulting in a small subdural hematoma, following two days of hallucinations.  Although the primary care physician testified that she had returned to her "baseline" prior to executing the restatement and made her own medical decisions, and several witnesses testified that, around the time of the execution, she recognized people and could converse with them, we cannot conclude that the trial court's finding that the mother's mentation was "uncertain" was unsupported by the record.  See Estate of Couture, 166 N.H. at 105.

The daughter argues that the mother was not required to share her new estate plan with the son or anyone else.  However, this does not address the relevance of testimony that she had shared past amendments to her estate plan with him.  The daughter argues that the trial court had no direct evidence that she had coerced or forced the mother, that she planned the restatement, or that she knew about it in advance.  However, undue influence may be established by circumstantial evidence.  See Archer, 126 N.H. at 28 (upholding master's finding regarding undue influence based upon circumstantial evidence).

The daughter argues that the mother changed her estate plan 19 days before her death "for perfectly sensible reasons":  (1) the daughter "had been an enormous help to her mother"; (2) the daughter had retired early to assist her mother in running the RV park; and (3) the son "was dramatically better off financially and did not need the financial security" of inheriting a share of the RV park.  However, the record supports the trial court's findings that:  (1) the daughter was "unable or unwilling" to assist with the mother's personal care; (2) the daughter often left the mother alone; and (3) although the mother knew of the son's "great wealth" for many years, her estate plan, prior to the restatement, gave him half the RV park.  Accordingly, we cannot conclude that the reasons the daughter posits for the mother changing her estate plan compelled a finding that the daughter had established the absence of undue influence.  See Estate of Couture, 166 N.H. at 105.

The daughter argues that the trial court "based its holding entirely on speculation arising from the decision not to believe the testimony of" her and her witnesses.  However, the trial court is in the best position to judge credibility. Fisher v. Koper, 127 N.H. 330, 335 (1985).

Furthermore, the trial court described the basis for its conclusions that certain witnesses were not credible.  It concluded that the daughter's "testimony lacked certain indicia of consistent truthfulness," and the record supports its finding that her testimony was inconsistent with her deposition and with other evidence.  The trial court noted that the daughter's "reluctance and/or failure to keep [the son] appraised of [the mother's] rapid decline, and indeed her hallucinations, casts a shadow on the purity of [the daughter's] intentions."  It found that the daughter's testimony that she did not know the terms of the

4

restatement before the mother executed it "gave the Court significant pause regarding her credibility." The court reasoned that it "stretches credulity to believe that [the daughter] was completely unaware of the changes . . . given her nearly total control of [the mother's] life at the time, her presence at the [restatement's] execution, and her follow-up call to [the mother's attorney] when the process began."

The daughter argues that the trial court's finding that the daughter withheld information about the mother's condition from the son is not supported by the record. However, the son testified, and the daughter did not contest, that the daughter did not call him when the mother died. The daughter testified that she was "consumed with other things."

The trial court concluded that the attorney who drafted the restatement and oversaw its execution "was not a particularly credible witness" and the record supports the court's findings that "his testimony was often evasive and in many instances demonstrated a selective memory," "his answers were avoidant, qualified by the common refrain that he 'probably would have,'" and his "trial testimony and deposition testimony varied on a number of key issues."

The trial court gave "little credence to" a witness "who claimed to be close to" the mother, but testified that "she was never personally notified" of the mother's death. Furthermore, the witness testified that the mother never informed her when the mother's favorite grandchild died in the mother's home, which called into question the witness's representation that she and the mother were "conversationally intimate."

The trial court declined to rely upon the testimony of the mother's hairdresser because the documentary evidence did not support her statement that she had seen the mother shortly before her death. The daughter complains that "[t]he Trial Court did not specifically address" the testimony of the mother's former part-time employee. However, his testimony was ambiguous as to the mother's intention to leave the RV park to the daughter. We note that both the hairdresser and the employee identified themselves as the daughter's friends.

To the extent that the daughter argues that "[d]isbelieving these witnesses does not warrant a conclusion that . . . there was undue influence," we note that it was the daughter's burden to show the absence of undue influence. See Estate of Cass, 143 N.H. at 61.

The daughter faults the trial court for relying upon three disinterested witnesses who were not conversant with the mother's estate plan and erroneously believed, based upon the son's representation, that he and his family were completely disinherited under the restatement. She argues that two of these witnesses did not have contact with the mother during the last months of her life and that all these witnesses corroborated that she had an excellent

5

relationship with the mother. However, the trial court did not rely upon these witnesses for their knowledge of the restatement, but for their knowledge of the mother's relationships with her children and her intentions regarding the RV park. The daughter argues that the mother's brother should have been discredited as a witness because he once worked for the son. However, credibility determinations are for the trial court. See Guardianship of E.L., 154 N.H. at 296.

Accordingly, we cannot conclude that the trial court's finding that the daughter failed to establish the absence of undue influence was unsupported by the record or legally erroneous. See Estate of Couture, 166 N.H. at 105.

Finally, we address whether the trial court applied the incorrect standard of proof. Both parties argued to the trial court that the daughter's burden was to establish the absence of undue influence by a preponderance of the evidence. See Dunlop v. Daigle, 122 N.H. 295, 298 (1982) (stating in civil action burden of proof is generally preponderance of the evidence). The trial court stated, in its order, that it was applying that standard. Nevertheless, the daughter contends that the trial court "was holding [her] to a much higher standard than" preponderance. The record does not reflect that the daughter made this argument to the trial court. See Bean, 151 N.H. at 250. Instead, her motion to reconsider merely argued that "much critical testimony was either misconstrued or entirely overlooked."

Furthermore, upon appeal, the daughter argues that "it is clear that the Trial Court was erroneously applying a de facto clear and convincing (or higher) standard" because the court "elevate[d] selected speculative testimony from certain witnesses" and "inconsistent[ly] . . . attributed witness bias." In support, she points to numerous pieces of evidence to which she contends the trial court did not grant appropriate weight.

She argues that: (1) the trial court "elevated the testimony of [the son's] witnesses and then went to extreme lengths to discount the testimony of [her] witnesses"; (2) it found undue influence because the mother "was in a weakened physical state, and . . . three people were surprised by the ultimate disposition"; (3) there was no evidence of "force o[r] coercion"; (4) the mother had a loving relationship with the daughter; (5) the mother "had a good relationship with both of her children"; (6) the mother knew that the son "was very well off"; (7) the mother's friend, whom the trial court concluded was not credible, testified that the mother told her that the son had said that he did not want the mother's money; (8) the daughter's assistance enabled the mother to remain in her home; (9) the mother's primary care physician saw the mother a week before she executed the restatement and reported that "she was at her baseline functioning," was "alert and oriented fully," with "appropriate affect," and "appropriately conversant" and noted that "she has been contemplating end-of-life issues"; and (10) the disposition of the RV park in the restatement was

6

"perfectly reasonable" and consistent with "the long 2002-2009 trend in [the mother's] estate plan – which already favored" the daughter over the son.

However, these facts, alone or in combination, do not compel a finding that the daughter established the absence of undue influence by a preponderance of the evidence. We defer to the trial court to determine the weight accorded to specific evidence. <u>See</u> <u>Guardianship of E.L.</u>, 154 N.H. at 296. Accordingly, we cannot conclude that the trial court, after stating that it was applying a preponderance of the evidence standard, actually applied a higher standard of proof.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**