# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0544, <u>In re Estate of Amy Marjorie Patnaude</u>, the court on June 29, 2018, issued the following order:**

Having considered the briefs, memorandum of law, and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See Sup. Ct. R.</u> 18(1). We affirm.

The appellant, Barbara Fleeman (Barbara), appeals the order of the Circuit Court (<u>King</u>, J.) invalidating a 2014 codicil to the 2010 will of Amy Marjorie Patnaude (Amy), Barbara's mother, as the product of undue influence. Barbara argues that the trial court erred in: (1) finding undue influence, when only two of the four factors usually present in undue influence cases existed in this case; (2) failing to give sufficient weight to the relationship between her sister, Doreen Demers (Doreen), and their mother in the fall of 2014; (3) finding that Doreen provided sufficient evidence to rebut the presumption that their mother was free of undue influence; (4) finding that Amy lacked an understanding of whether, and how much, Doreen had repaid her loan debts; and (5) finding that Amy lacked the requisite mental capacity to execute the 2014 codicil.

"The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567–A:4 (2007). Consequently, we will not disturb the trial court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. <u>In re Estate of Couture</u>, 166 N.H. 101, 105 (2014). We defer to the judgment of the trial court to resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given to testimony, recognizing that, as the trier of fact, it is in the best position to measure the persuasiveness and credibility of evidence. <u>In re Guardianship of E.L.</u>, 154 N.H. 292, 296 (2006).

We first address Barbara's argument that the trial court erred because, after noting that four factors are usually present in cases involving undue influence, it found undue influence in this case based upon two of the factors. In particular, she argues that the disposition Amy made in her 2014 codicil was not an unnatural disposition of her assets and that neither Barbara nor her daughter, Lisa Richmond (Lisa), used improper means to procure the contested disposition. As an initial matter, we note that the trial court was citing a Massachusetts case which noted that such factors are <u>usually</u> present. The trial court did not rule, nor have we held, that undue influence cannot

exist absent an unnatural disposition of assets or the use of improper means. In New Hampshire, the determination of whether undue influence exists is a question of fact based upon an examination of all the circumstances. In Re Estate of Cass, 143 N.H. 57, 61 (1998). We consider factors including the relationships among the parties, the physical and mental condition of the testator, the reasonableness and nature of the disposition, and "the personalities of the parties." Id. (quotation omitted).

In this case, the court found that from 2007 through October 2014, Doreen had assumed the role of Amy's caregiver, bringing her to appointments, assisting with daily medications, and helping her pay bills. However, in the fall and winter of 2014, Barbara and Lisa not only "isolate[d] Amy from her previous long-time caregiver, Doreen," but also "assisted in procuring a 'no-trespass order' against [Doreen]." The court found that Amy, who was 92 years old and suffering from dementia, was "in a state of diminished mental capacity that rendered her easily influenced by those around her." In early September 2014, Lisa "noticed" a bank statement in Amy's home showing that Amy held a $97,000 certificate of deposit (CD) in trust for Doreen. Shortly after this discovery, Barbara "suddenly began taking a heightened interest in Amy's circumstances and finances." Barbara, who "did not undertake regular contact with Amy until the final fifteen months of Amy's life," soon "arrived unannounced from Texas on October 1, 2014." "Ostensibly," the court found, "her visit was to 'surprise' Amy for her birthday on October 5th." However, on October 3, 2014, Amy, Lisa, and Barbara went to the bank to have the CD "split three ways," a change that benefitted Barbara. Barbara returned to Texas in mid-October.

Amy's original will, which was executed in 2010, provided for small bequests to two other children and a stepson; Amy left the residuary estate to Barbara and Doreen in equal shares. No one disputes that the 2010 will was valid. On December 10, 2014, Lisa accompanied Amy to meet with an attorney, who drafted a codicil to Amy's will, the only purpose of which was to disinherit Doreen. Amy and Lisa returned to the attorney's office the next day, and Amy executed the codicil in Lisa's presence. Amy died approximately one year later. The court found that "Barbara, who stood in a confidential relationship with Amy, not only benefitted from the 2014 Codicil, but was the only person to benefit from it, as it removed Doreen as a residuary distributee, rendering Barbara as Amy's only child to receive a large share of her probate estate." We conclude that these findings were sufficient to support the trial court's conclusion that the codicil was the product of undue influence. See In re Estate of Couture, 166 N.H. at 105.

We next address Barbara's argument that the trial court failed to give sufficient weight to the relationship between Doreen and Amy in the fall of 2014. We do not reweigh the evidence to determine whether we would have ruled differently. In re Guardianship of E.L., 154 N.H. at 296. Rather, we

2

review the record to determine if the trial court's findings could be reasonably made given the testimony and the evidence before it.  Id.

The record shows that the court fully considered Doreen's relationship with Amy during the fall of 2014.  The trial court noted that in October 2014, shortly after Barbara, Lisa and Amy went to the bank to change the CD, Doreen brought Amy back to the bank to reverse the change.  However, Amy told the bank manager privately that she wanted to have the CD "split three ways."  Because the bank was unable to confirm that Amy had the mental capacity to manage her affairs, the bank froze the account.  Shortly thereafter, Doreen retained an attorney to prepare a power of attorney for Amy, naming Doreen as agent.

The trial court noted that if it were called upon to determine the validity of the power of attorney, it would most likely conclude that it was the product of Doreen's undue influence.  The court found that "at times after September 1, 2014, Doreen, Barbara, and Lisa all attempted to take advantage of Amy in order to control both her financial assets and her person."  In the process, the court found, Amy "became a human ping pong ball, subjected to attempts to control and influence her person and finances by two daughters, each trying to maximize their inheritance."  Based upon these findings, we conclude that the trial court fully considered Doreen's relationship with Amy in the fall of 2014, and that its findings could be reasonably made given the testimony and the evidence before it.  See In re Guardianship of E.L., 154 N.H. at 296.

Barbara argues that the trial court erred in stating that "[i]t need not linger on the legal [e]ffect, if any, of Doreen's attempts [to unduly influence Amy], however, as that issue is not before it."  Barbara asserts that "[b]y not analyzing what Doreen had done to her mother, the Court paints a distorted picture."  The interpretation of a trial court's order presents a question of law for this court.  See Guy v. Town of Temple, 157 N.H. 642, 649 (2008).  We do not construe the court's order to mean that it did not consider Doreen's attempts to unduly influence Amy.  As previously noted, the record shows that the court fully considered Doreen's relationship with Amy during the fall of 2014.

Barbara next argues that Doreen, having failed to produce an expert witness, did not provide sufficient evidence to rebut the presumption that Amy was free of undue influence.  As an initial matter, Barbara has failed to show that she raised this issue in the trial court.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  Even assuming, without deciding, that the issue is preserved, Barbara misstates the evidentiary burdens.  The court found that Barbara was in a confidential relationship with Amy, and that Barbara was the beneficiary of the challenged codicil.  A beneficiary in a confidential relationship with the testator has the burden of proving the absence of undue influence.  Archer v. Dow, 126 N.H. 24, 28 (1985).  Thus, as Barbara concedes

elsewhere in her brief, she "had the burden of proving by a preponderance of the evidence that Amy was free of undue influence at the time she signed her Codicil on December 11, 2014." The trial court found that Barbara failed to meet her burden of proof on this issue. Thus, Doreen had no burden to rebut any presumption that Amy was free of undue influence. Doreen's witnesses included Amy's attending physician, Dr. West, who testified that Amy was suffering from dementia. However, contrary to Barbara's assertions, Doreen was not required to "explain the nature or extent of Amy's dementia" or to "show[ ] what kind of dementia Amy had." (Capitalization omitted.)

Barbara next argues that the trial court erred in finding that Amy lacked an understanding of whether, and how much, Doreen had repaid her loan debts to her mother. In the codicil, Amy states that she is disinheriting Doreen because Doreen "has taken money from me and not repaid any of the money I have loaned her." The trial court found this statement to be inaccurate because Amy had, in fact, loaned $11,200 to Doreen and her husband, and they repaid Amy all but $2,750. The record supports the trial court's finding. See In re Estate of Couture, 166 N.H. at 105.

Finally, Barbara argues that the weight of the evidence favors a finding that Amy had the requisite mental capacity to execute the 2014 codicil. The trial court found that, although the evidence would support the alternative ruling that Amy lacked the requisite mental capacity to execute the 2014 codicil, it did not need to decide this issue because it found the codicil to be invalid based upon undue influence. Because we uphold the trial court's finding of undue influence, we need not decide whether Amy had the required mental capacity to execute the 2014 codicil. See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address parties' other arguments where holding on one issue is dispositive).

Because we have neither referred to, nor relied upon, the portions of Doreen's memorandum of law which Barbara finds to be irrelevant to the issues on appeal, Barbara's motion to strike those portions of Doreen's memorandum is moot. See In the Matter of Preston and Preston, 147 N.H. 48, 52 (2001).

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**

4