Department of Labor
No. 2010-517

APPEAL OF A & J BEVERAGE DISTRIBUTION, INC.
(New Hampshire Department of Labor)

Argued: September 15, 2011
Opinion Issued: January 27, 2012

*Walker & Buchholz, P.A.*, of Manchester (*Kevin E. Buchholz* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Mark T. Broth* and *Margaret A. O'Brien* on the brief, and *Ms. O'Brien* orally), for the respondent.

HICKS, J. The respondent, A & J Beverage Distribution, Inc. (A & J), appeals decisions of the New Hampshire Department of Labor (DOL) in

this proceeding under the Whistleblowers' Protection Act, RSA ch. 275-E (2010 & Supp. 2011), brought by the petitioner, Kevin Perrier. We vacate.

The following facts were found by DOL or are supported in the record. The petitioner worked for A & J as a tractor trailer driver. A & J provided its employees with a health insurance plan, paying sixty percent of the cost. Participating employees were required to pay the remaining forty percent of their premiums. The plan operated on a calendar year, with open enrollment in December for the following year.

Although the petitioner declined to join the plan when he was hired in 2006, he chose to enroll for the year 2007. In January 2008, he learned that the premium had increased by fifty-two percent. He informed A & J that he wanted to opt out of coverage and did not authorize deduction of the increased premium from his pay. A & J insisted that the petitioner pay the premium for January and deducted the pro rata co-pay amount for that month from his wages. The petitioner brought a successful wage claim before DOL for a refund of the premium.

The petitioner remained uninsured through 2008 and was not given information about the 2009 plan during the open enrollment period in December 2008. In January 2009, he learned from other employees that the premium had decreased. He sought information about the plan from A & J, including the summary plan description (SPD), but was refused. After consulting DOL and the United States Department of Labor, the petitioner wrote a letter to A & J's owner and vice president, stating:

> I have contacted the U.S. Department of Labor, Employee Benefits Security Administration, regarding questions about the company's group health plan. I understand that Employee Retirement Income Security Act (ERISA) section 104 requires plans to disclose certain information to plan participants and beneficiaries. Group health plans are covered by ERISA and participants do not have to be active in the plan to receive the information. The U.S. Department of Labor may impose a penalty against the Plan administrator for failing to provide the documents.

> Please send me . . . a copy of the Summary Plan Description (SPD) for the company's group health plan. I understand that plan administrators are required to respond to written requests for information within 30 days. Failure to do so, at the court's discretion, could be a fine up to $110 a day from the date of such failure or refusal.

> If I do not receive the requested information, I will be contacting the U.S. Department of Labor again for assistance. As mentioned, the U.S. Department of Labor can impose the above mentioned fine.

A & J then furnished the petitioner with information about the plan, but the information did not qualify as an SPD. On January 30, 2009, the plaintiff was terminated.

The petitioner filed a whistleblower's complaint with DOL on August 3, 2009, alleging that "[d]ue to [his] previous complaint," namely, his 2008 wage claim, he was "[t]erminated when [he] requested a copy of the Summary Plan Description for the group health plan." He sought reinstatement, back pay, fringe benefits and seniority rights, and "appropriate injunctive relief."

The DOL hearing officer ruled that the petitioner "sustained his burden of proof to show that he was discharged in retaliation for having exercised his legitimate rights under the law." In particular, the hearing officer found that "[i]n requesting information about the health insurance plan, [the petitioner] was acting in accordance with his rights under [ERISA]." The hearing officer awarded back pay, but determined "that the employment relationship is tinged with animosity such that ordering reinstatement would not be in the best interests of either party." Accordingly, instead of reinstatement, the hearing officer ordered front pay "continuing until the [petitioner] finds employment." Thereafter, the hearing officer awarded attorney's fees, costs and statutory interest. A & J unsuccessfully moved for reconsideration, arguing, *inter alia*, that the petitioner's whistleblower claim was preempted by ERISA.

On appeal, A & J again asserts preemption. The petitioner counters that the issue of ERISA preemption was not properly raised below and therefore has not been preserved for appeal. He contends that the question raised at argument before DOL was whether that tribunal had "jurisdiction to rule on ERISA issues." He then argues that "jurisdiction to hear a case is different than whether or not the body hearing the case is preempted from applying a particular law (in this case, state law) to determine the case."

■ Ordinarily, we would decide the preservation issue before addressing the merits of the issue allegedly not preserved, since issues not preserved are normally waived. *See, e.g.*, *Dupont v. N.H. Real Estate Comm'n*, 157 N.H. 658, 662 (2008). In this case, however, an examination of ERISA preemption principles is essential to our ruling on preservation. We therefore defer discussion of preservation and begin with the claim of ERISA preemption.

A & J asserts that the petitioner's whistleblower's action is preempted by sections 514(a) and 502(a) of ERISA. *See* 29 U.S.C. §§ 1144(a) (2006), 1132(a) (2006 & Supp. 2009). Section 514(a) provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described in that statute. 29 U.S.C. § 1144(a); *see Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 829 (1988). Early interpretations of this language by the United States Supreme Court "relied heavily upon textual analysis and a dictionary definition of 'relate to' and led to the conclusion that ERISA preemption was 'conspicuous for its breadth.' " *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 49 (1st Cir. 2000) (quotations and citation omitted).

Employing those early interpretations, the Supreme Court found a state law wrongful termination claim preempted in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990). The Court noted that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan" and concluded that in the case before it, "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law." *Ingersoll-Rand.* 498 U.S. at 139, 139-40 (quotation omitted). The Court then held:

> We have no difficulty in concluding that the cause of action which the Texas Supreme Court recognized here — a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund — "relate[s] to" an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted.

*Id.* at 140.

Subsequently, in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995), the Court "signaled a significant analytic shift in regard to the 'connection with' portion of the ERISA preemption inquiry, abandoning strict textualism in favor of a more nuanced approach." *Carpenters Local Union No. 26 v. U.S. F. & G. Co.*, 215 F.3d 136, 140 (1st Cir. 2000) (footnote omitted). "Under *Travelers*, preemption issues must be decided by examining the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the state law's effect on ERISA plans." *McClintick v. Timber Products Manufacturers*, 21 P.3d 328, 333 (Wash. Ct. App. 2001) (quotation omitted).

■ Even under the new analysis, however, courts recognize "congressional intent to supplant state law in the area of whistleblower protection." *Id.*; *see Carpenters Local Union No. 26*, 215 F.3d at 140 ("It is well accepted, . . . even under the new regime, that state laws which furnish alternative enforcement mechanisms threaten the uniformity that Congress labored to achieve and thus are preempted by ERISA."). Examination of the new test supports that conclusion.

> According to the *Travelers* Court, ERISA's purpose was to ensure that plans and plan sponsors would be subject to a uniform body of benefits law. The Court identified three categories of state laws that "relate to" ERISA plans in such a way that preemption of those laws furthers this purpose: (1) state laws that mandate employee benefit structures or their administration, (2) state laws that bind plan administrators to a particular choice, and (3) state law causes of action that provide alternative enforcement mechanisms to ERISA's enforcement regime.

*Hampers*, 202 F.3d at 51 (quotations, citation and brackets omitted). This case implicates the third category, which, in turn, relates to the second prong of A & J's preemption argument; namely, that the petitioner's whistleblower claim is preempted by section 502(a) of ERISA. Accordingly, we next examine that section.

Section 502(a) is ERISA's civil enforcement provision. It provides, in part:

> A civil action may be brought —
>
> . . .
>
>     (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a). ERISA contains a retaliation provision that may be enforced in a section 502(a) action. Specifically, section 510 of ERISA provides in part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section

1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140 (2006).

■ A & J argues that the petitioner's whistleblower claim "falls squarely within" this provision. We agree. Section 104 of ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description." 29 U.S.C. § 1024(b)(4) (2006). Thus, in requesting a copy of the SPD, the petitioner was exercising a "right to which he is entitled under the provisions of" ERISA. 29 U.S.C. § 1140. His whistleblower complaint alleged that he "was terminated because [he] requested a copy of the SPD." Accordingly, he alleged conduct that violated section 510 of ERISA.

The petitioner himself argues that "ERISA provides for almost the identical protections and relief as are provided for under the Whistleblower act." Because ERISA provides a remedy for the type of conduct alleged in the petitioner's DOL complaint, his state whistleblower claim constitutes a "cause[] of action that provide[s] [an] alternative enforcement mechanism[] to ERISA's enforcement regime." *Hampers*, 202 F.3d at 51 (quotation omitted). Accordingly, his state claim is pre-empted by ERISA. *See id.* Notably, the Supreme Court in *Ingersoll-Rand* recognized such conflict preemption as an alternative to its holding that a state wrongful termination cause of action "'relate[d] to' an ERISA-covered plan." *Ingersoll-Rand.* 498 U.S. at 140, 142. It stated, "Even if there were no express pre-emption in this case, the [state] cause of action would be pre-empted because it conflicts directly with an ERISA cause of action" by "fall[ing] squarely within the ambit of ERISA § 510." *Id.* at 142. As the court in *Carpenters Local Union No. 26* observed, it is unclear whether § 502 or "alternative enforcement mechanism" preemption should be viewed "as a separate branch of ERISA preemption analysis" or "considered as part and parcel of a 'connection' or 'reference' analysis" for purposes of § 514 preemption. *Carpenters Local Union No. 26*, 215 F.3d at 140 n.4; *see Travelers*, 514 U.S. at 658 ("[W]e have held that state laws providing alternative enforcement mechanisms also relate to ERISA plans, triggering pre-emption."). We need not decide, however, "under which heading . . . [to] place the inquiry." *Local Union No. 26*, 215 F.3d at 140 n.4. Having concluded that the petitioner's state claim conflicts with ERISA's enforcement scheme, we hold it is preempted.

The petitioner contends, nevertheless, that his claim is not preempted because either: (1) he was "not a 'participant' within the meaning of ERISA"; or (2) "the hearing officer applied ERISA law in determining that [the petitioner] was wrongfully terminated."

■ With regard to the first claim, the petitioner asserts that "should it be determined that [he] was not a participant within the meaning of the ERISA law, and thereby lacking standing to bring an ERISA claim, he would be free to seek state law relief." The hearing officer, however, explicitly ruled that "[w]hen the [petitioner] requested the SPD for the health plan in January of 2009, he was a participant under the law and entitled to the information." "Because the [petitioner] did not file a cross-appeal or move to add this question on appeal, we will not review it." *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 686 (1993).

Alternatively, the petitioner argues:

> A fair reading of the hearing officer's decision is that he viewed RSA 275-E as the statutory authority for him to exercise jurisdiction to apply the protections and remedies provided for under ERISA. Having applied the correct law, after A&J failed to remove the case to federal court, there is no preemption argument to be made.

Even assuming that were the case, the hearing officer's decision could not stand unless DOL had jurisdiction to hear the ERISA claim. The petitioner contends that it did, arguing:

> [The petitioner's] action, to enforce his right not to be terminated and/or discriminated against for having requested information that would allow him to make a decision about whether or not he wished to re-enroll in the A&J group health plan, is an action "to enforce his rights under the terms of the plan," within the meaning of ] §1132(a)(1)(B)[, over which state and federal courts have concurrent jurisdiction.]

We disagree.

The ERISA provision the petitioner cites provides that:

> A civil action may be brought —
>
> (1) by a participant or beneficiary —
>
>   . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a). Subsection (e) of that section provides, in part:

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1)(2006).

█ While the petitioner correctly notes that state and federal courts have concurrent jurisdiction over actions under 29 U.S.C. § 1132(a)(1)(B), his whistleblower claim is not such an action. It is not, as he asserts, "an action 'to enforce his rights under the terms of the plan.'" Although the petitioner asserted at oral argument that the plan incorporated the statute, and, therefore, he was asserting his rights under the plan as well as under ERISA, he has failed to provide a copy of any plan provision purporting to incorporate ERISA. In fact, the SPD provided in the record contains information about ERISA in compliance with that law, but recites the caveat that the information "does not constitute a part of the Plan, nor of any insurance policy issued in connection with it." Accordingly, we reject the petitioner's contention that his action is one to enforce rights under the plan.

Rather, as discussed above, the petitioner's claim, if brought under ERISA, would be an action for violation of 29 U.S.C. § 1140, brought pursuant to 29 U.S.C. § 1132(a)(3); in other words, an action "to redress . . . [a] violation[]" of a "provision[] of this subchapter." 29 U.S.C. § 1132(a)(3). Subsection (e) of 29 U.S.C. § 1132 provides that federal courts have exclusive jurisdiction over such claims. 29 U.S.C. § 1132(e)(1). Accordingly, we reject the petitioner's argument that DOL had jurisdiction over the petitioner's ERISA claim.

█ The foregoing conclusion is dispositive of the petitioner's preservation argument. "[F]or state-law claims that do not fall within the scope of one of the[] . . . categories [over which state and federal courts have concurrent jurisdiction], an assertion of ERISA preemption is, if successful, jurisdictional and may therefore be raised for the first time on appeal." *Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542, 549 (Tex. 1991).

■ Finally, because DOL lacked subject matter jurisdiction over the petitioner's whistleblower claim, its decision, including its award of attorney's fees, is void. *See Gordon v. Town of Rye*, 162 N.H. 144, 149 (2011) ("Absent subject matter jurisdiction, a tribunal's order is void.").

*Vacated.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.