NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

7th Circuit Court – Dover Probate Division
No. 2012-850

IN RE ESTATE OF LUCIEN COUTURE

Argued: November 14, 2013
Opinion Issued: February 21, 2014

McNeill, Taylor & Gallo, P.A., of Dover (R. Peter Taylor on the brief and orally), for the petitioner.

Wing & Weintraub, P.C., of Milford (David C. Wing on the brief and orally), for the respondent.

CONBOY, J. The respondent, Hellen Couture, appeals an order of the 7th Circuit Court – Dover Probate Division (Cassavechia, J.), which granted the petition of the petitioner, Thomas Couture, the adult son of the decedent, Lucien Couture, to impose a constructive trust, for the benefit of the decedent's heirs, over certain life insurance proceeds paid to the respondent upon the decedent's death. We affirm and remand.

I. Background

The parties either do not dispute, or the record establishes, the following facts. The petition for a constructive trust is grounded upon the claim that the respondent, the decedent's wife, through fraud, deceit, and misrepresentation, induced the decedent to marry her after she gave birth to a daughter whom she

claimed was his. The $140,000 life insurance proceeds were paid equally to the respondent and to the daughter pursuant to the decedent's beneficiary designation. The petitioner sought a constructive trust over only the respondent's portion of the insurance proceeds, which were placed in escrow when the petition was filed.

The respondent and the decedent married in September 2003, a few days after the child was born. The child's birth certificate lists the decedent as her father. Although the decedent had had a vasectomy many years before the respondent's pregnancy, he did not question whether the child was his biological child. Nor did he seek medical confirmation or further evaluation as to whether he could have fathered the child.

Following their marriage, the decedent, the respondent, and the child did not live together as a family. Instead, the decedent lived in Rochester, and the respondent and the child lived together in Somersworth. Unbeknownst to the decedent, the respondent had a concurrent relationship with John Tamara. The trial court found the relationship was "more likely than not" a marriage. The respondent and Tamara continued their relationship throughout the respondent's marriage to the decedent.

In December 2005, the decedent designated the respondent and the child as his beneficiaries of a death benefit payable under an employer-provided life insurance policy. In October or November 2007, Tamara, the respondent, and her daughter moved to Hawaii. The respondent and her daughter returned to New Hampshire in 2008 and lived with the decedent for approximately one month. In August 2008, the decedent filed a petition to divorce the respondent. On January 7, 2009, only days before the final divorce hearing was scheduled to occur, the decedent committed suicide. He died intestate. Pursuant to the subject beneficiary designation form, fifty percent of the death benefit was paid to the respondent and fifty percent was paid to the child.

In February 2009, the decedent's sister brought the petition for a constructive trust. When it was determined that the sister lacked standing, the court allowed the petitioner to be substituted as a party. In November 2011, the respondent moved to dismiss the petition on the grounds that the trial court lacked subject matter jurisdiction to impose a constructive trust on her share of the life insurance proceeds, and that the instant claim was not yet justiciable. The trial court denied the motion, and the case proceeded to trial.

Based upon the evidence at trial, the trial court found that the petitioner had established by clear and convincing evidence that the respondent wrongfully induced the decedent to marry her, even though she was already married to Tamara, "or at least in a more intimate marriage-like relationship with him." The trial court further found that the decedent provided life

2

insurance death benefits to the respondent that "were spousal-based," and that it would be unconscionable for her to retain them "given her bad faith, deceit and misrepresentations." The trial court decided that if the respondent were allowed to retain the proceeds, she would be unjustly enriched. Accordingly, the court imposed a constructive trust on the respondent's share of the life insurance proceeds. The trial court denied the respondent's subsequent motion for reconsideration, and this appeal followed.

II. Analysis

Our standard of review of a probate division decision is determined by statute: "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567–A:4 (2007). Consequently, we will not disturb the probate division's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. See In re Angel N., 141 N.H. 158, 161 (1996).

A. Standing

The respondent first argues that the petitioner lacks "standing" in the instant dispute, even though he is one of the decedent's heirs, and even though she concedes in her brief that "[i]n the event that the constructive trust is upheld," the life insurance proceeds will be "award[ed] . . . to the Estate." "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Libertarian Party of N.H. v. Sec'y of State, 158 N.H. 194, 195 (2008) (quotation omitted). Here, the petitioner has standing to seek a constructive trust because, as one of the decedent's heirs, he has a direct legal or equitable interest in the decedent's estate. See RSA 561:1 (2007); cf. In re Estate of Kelly, 130 N.H. 773, 778 (1988) ("[A] will contestant must generally have some direct legal or equitable interest in the decedent's estate" to have standing in an action challenging a will's validity.).

We disagree with the respondent's argument that the petitioner lacks standing because, she, as the decedent's surviving spouse, will be the ultimate recipient of the life insurance proceeds pursuant to the intestate succession statute. See RSA 561:1. As the trial court correctly observed, upon imposition of the constructive trust, the respondent merely holds the life insurance proceeds "as constructive trustee for the benefit of [the decedent's] heirs."

We similarly reject the respondent's contention that the petitioner "has no legal or equitable rights at stake in the life insurance proceeds" because he is not the decedent's named beneficiary. Her reliance upon the beneficiary form is mistaken. Because the proceeds have already been distributed according to the beneficiary form, the fact that the petitioner is not named as a

beneficiary is immaterial, and does not divest him of standing to pursue a constructive trust on the respondent's share of those proceeds.

### B. Jurisdiction

The respondent next asserts that this case falls within the exclusive jurisdiction of federal courts pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), see 29 U.S.C. §§ 1001 et seq. (2006 & Supp. 2012). Although there is no dispute that the life insurance plan at issue is an ERISA-covered benefit plan, the respondent is mistaken in her assertion that federal courts have exclusive jurisdiction over this petition for a constructive trust.

ERISA's jurisdictional provision states: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in § 1021(f)(1) of this title." 29 U.S.C. § 1132(e)(1) (2006). Section 1021(f)(1) refers to: (1) the Pension Benefit Guaranty Corporation; (2) plan participants; (3) plan beneficiaries; (4) employers; and (5) labor organizations. 29 U.S.C. § 1021(f)(1) (Supp. 2012). As we explain below, this is not a "civil action under [ERISA]." 29 U.S.C. § 1132(e)(1). However, even if it were, the exclusive jurisdiction provision does not apply because the petitioner is not a person to whom section 1021(f)(1) refers. The respondent's reliance upon Appeal of A & J Beverage Distribution, 163 N.H. 228 (2012), is misplaced. In that case, the petitioner was a plan participant. See Appeal of A & J Beverage Distribution, 163 N.H. at 230, 235.

### C. ERISA Preemption

#### 1. Express Preemption

Alternatively, the respondent contends that the petitioner's state law constructive trust claim is preempted by a section of ERISA, which provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described in the statute. 29 U.S.C. § 1144(a) (2006); see Appeal of A & J Beverage Distribution, 163 N.H. at 232. As we explained in Appeal of A & J Beverage Distribution, 163 N.H. at 232, "[e]arly interpretations of this language by the United States Supreme Court relied heavily upon textual analysis and a dictionary definition of 'relate to' and led to the conclusion that ERISA preemption was 'conspicuous for its breadth.'" (Quotation omitted.) Thus, in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990), the Court held that "[a] law 'relates to' an employee benefit plan, . . . if it has a connection with or reference to such a plan." (Quotation omitted.)

Relying upon those early interpretations of ERISA preemption, the respondent argues that the petitioner's claim is preempted because it "is a claim against death benefits from a life insurance policy pursuant to an employee welfare benefit plan." (Quotation omitted.) However, as we also explained in Appeal of A & J Beverage Distribution, 163 N.H. at 232, the Supreme Court has since "abandon[ed] strict textualism in favor of a more nuanced approach" to ERISA preemption. (Quotation omitted.) Under the new approach, "preemption issues must be decided by examining the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the state law's effect on ERISA plans." Appeal of A & J Beverage Distribution, 163 N.H. at 232 (quotation omitted). Thus, the Court identified three categories of state laws that "relate to" ERISA plans such that their preemption furthers the purpose of ERISA: (1) state laws that mandate employee benefit structures or their administration; (2) state laws that bind plan administrators to a particular choice; and (3) state law causes of action that provide alternative enforcement mechanisms to ERISA's enforcement regime. Id. at 233; see Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 51 (1st Cir. 2000).

In Appeal of A & J Beverage Distribution, we concluded that the petitioner's state law whistleblower claim implicated the third category. See Appeal of A & J Beverage Distribution, 163 N.H. at 233. We then held that because ERISA provides a remedy for the conduct alleged in the petitioner's state law whistleblower complaint, his state law claim constituted a cause of action that provided an alternative enforcement mechanism to ERISA's enforcement regime, and, therefore, was preempted by ERISA. Id. at 234.

Although the respondent argues that the petitioner's action here is also an action to redress an ERISA violation, we disagree. The petitioner's action is a state law action to impose a constructive trust on benefits that have already been paid according to the life insurance policy. Here, the plan administrator complied with ERISA by paying the benefits pursuant to the decedent's benefit designation form. See 29 U.S.C. § 1104(a)(1)(D) (2006) (directing administrator of ERISA-covered benefit plan to discharge her duties "in accordance with the documents and instruments governing the plan"); see also Kennedy v. Plan Administrator for DuPont Sav. and Investment Plan, 555 U.S. 285, 304 (2009) (holding that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan). As the trial court here stated: "None of the parties to this action have any issue with the employment benefit plan." To the extent that the respondent contends that ERISA provides a remedy equivalent to a common law constructive trust, she has failed to brief this argument sufficiently for appellate review.

5

## 2. Conflict Preemption

We also reject the respondent's assertion that the petitioner's state law constructive trust claim conflicts with, and, therefore, is preempted by, ERISA's anti-alienation provision, see 29 U.S.C. § 1056(d)(1) (2006). The anti-alienation provision provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Id. The respondent argues that this provision not only required the plan administrators in this case to distribute the life insurance proceeds to her, but also precluded the petitioner from seeking to prevent her from retaining them.

"By its terms, the antialienation provision . . . requires a plan to provide expressly that benefits be neither 'assigned' nor 'alienated.'" Kennedy, 555 U.S. at 292. There is nothing in the plain language of the provision to indicate Congressional intent to preclude an action by the estate of a deceased plan participant to recover benefits already paid to a plan beneficiary. See Hoult v. Hoult, 373 F.3d 47, 54 (1st Cir. 2004). "If Congress had intended [ERISA's anti-alienation provision] to reach that far, it could easily have employed the type of language found [in other statutes], which prohibit[ ] attachment of benefits 'either before or after receipt by the beneficiary.'" Id.

The respondent contends that the policy objectives of the anti-alienation provision will be thwarted if she is not permitted to retain her share of the life insurance proceeds. In so arguing, she relies primarily upon the Supreme Court's decision in Kennedy. Kennedy involved a suit by the estate of a deceased plan participant against an ERISA plan administrator for wrongfully distributing the plan's proceeds to the participant's ex-spouse. Kennedy, 555 U.S. at 289-90. Before the couple divorced, the participant (husband) had designated his then-wife as the sole beneficiary of his savings and investment plan. Id. at 289. In the divorce decree, the wife purported to waive her right to the plan proceeds. Id. However, the husband never removed the wife as beneficiary. Id. Despite the divorce decree, the plan administrator paid the proceeds to the wife. Id. at 290.

The Supreme Court ruled that the plan administrator did not violate ERISA by ignoring the wife's purported waiver. Id. at 299-300. The Court decided that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan regardless of any state-law waiver purporting to divest that beneficiary of her right to them. Id. at 304. However, the Court explicitly left open the question of whether, once the plan administrator distributes the benefits, the decedent's estate may enforce the waiver against the plan beneficiary. See id. at 299, n.10.

The Court "emphasized two important policy considerations in explaining its holding." Estate of Kensinger v. URL Pharma, Inc., 674 F.3d 131, 135 (3d

6

Cir. 2012). "First, it stated that ERISA's well-established policy favoring uniform and efficient plan administration would be undermined if employers had to consider benefit claims from sources extrinsic to plan documents." Id.; see Kennedy, 555 U.S. at 300-01. "Second, [it] explained that its holding was necessary in order to avoid subjecting plan administrators to potential double liability." Estate of Kensinger, 674 F.3d at 135; see Kennedy, 555 U.S. at 301. Allowing the estate to sue the plan administrator for disbursing the proceeds to the named beneficiary "would have placed the administrator in a hopeless bind: if it honored the waiver, it could be sued by the named beneficiary for disregarding the mandate of ERISA; if it honored the plan documents, it could be sued by the estate for disregarding [the] . . . waiver." Estate of Kensinger, 674 F.3d at 135-36.

Contrary to the respondent's assertions, "[t]hese two concerns – the need for straightforward administration of plans and the avoidance of potential liability – . . . are not implicated here." Id. at 136. The constructive trust action brought against the respondent, after she received her share of the life insurance proceeds, does not implicate the administration of the decedent's life insurance plan. See id. As the trial court aptly observed:

> If imposed, a constructive trust would not interfere with or disrupt the transfer of the insurance proceeds to [the respondent]. The money has already been paid out by the insurer and is currently being held in escrow . . . . Accordingly, if the remedy of constructive trust is ultimately awarded, it will be funded with the money now held in escrow – not with an insurance policy or property rights under it.

Although the Supreme Court also stated that an important ERISA objective was to "ensur[e] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules," Kennedy, 555 U.S. at 301 (quotation omitted), this refers to the "expeditious distribution of funds from plan administrators." Estate of Kensinger, 674 F.3d at 136 (emphasis omitted); see Andochick v. Byrd, 709 F.3d 296, 299 (4th Cir.), cert. denied, 134 S. Ct. 235 (2013). Imposing a constructive trust on the proceeds in this case does not prevent the beneficiary from "get[ting] what's coming quickly" from the plan itself. Kennedy, 555 U.S. at 301 (quotation omitted). Rather, it merely prevents her from retaining what she "quickly" received. See Andochick, 709 F.3d at 300 (quotation omitted). As other courts have observed, there is "a fundamental difference between state law causes of action that challenge a plan beneficiary's right to receive the proceeds of an ERISA plan and those that seek to challenge a plan beneficiary's right to keep the proceeds of an ERISA plan." Brown ex rel. Estate of Sanger v. Wright, 511 F. Supp. 2d 850, 853 (E.D. Mich. 2007). As one commentator has explained: "Once the proceeds are distributed, the person seeking recovery of [them] is no longer seeking a

7

determination of the beneficiary under the plan, but is instead challenging who has the continuing right to retain the proceeds." Comment, <u>When Happily Ever After is Not Ever After, After All: Rectifying the Plan Documents Rule Under ERISA to Benefit the Right Person</u>, 52 S. Tex. L. Rev. 127, 133 (2010). Here, because the respondent has already received her share of the life insurance proceeds, we conclude that ERISA does not bar the petitioner's constructive trust action.

Federal courts have held that ERISA does not preempt post-disbursement suits against ERISA beneficiaries in similar contexts. <u>See Andochick</u>, 709 F.3d at 301 ("adopt[ing] the same view as every published appellate opinion to address the question"); <u>Estate of Kensinger</u>, 674 F.3d at 132 (in case of first impression, court decides that estate may bring action directly against beneficiary to recover proceeds paid to her pursuant to beneficiary designation form); <u>Guidry v. Sheet Metal Workers Nat. Pension Fund</u>, 39 F.3d 1078, 1080-83 (10th Cir. 1994) (affirming, <u>en banc</u>, imposition of trust on distributed proceeds from ERISA plan); <u>Central States, SE & SW Areas Pension v. Howell</u>, 227 F.3d 672, 678-79 (6th Cir. 2000) (holding that constructive trust could be imposed on employee welfare plan benefits after distribution to beneficiary). <u>But see Staelens ex rel. Estate of Staelens v. Staelens</u>, 677 F. Supp. 2d 499, 508 (D. Mass. 2010).

That the petitioner should be able to bring a constructive trust action against the respondent "finds further support in a line of federal cases holding that creditors can sue named beneficiaries to recover plan benefits once those benefits have been distributed." <u>Estate of Kensinger</u>, 674 F.3d at 137. "A number of circuits," including the First Circuit Court of Appeals, "have held that even though ERISA prevents a creditor from encumbering [benefit payments] <u>held by a plan administrator</u>, the funds are no longer entitled to ERISA's protections against the creditor's claims <u>once they are paid to the beneficiary</u>." <u>Id</u>.; <u>see Kickham Hanley PC v. Kodak Retirement Income Plan</u>, 558 F.3d 204, 211 (2d Cir. 2009) ("Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owners[s]." (quotation omitted)); <u>DaimlerChrysler Corp. v. Cox</u>, 447 F.3d 967, 974 (6th Cir. 2006) ("This circuit, along with a majority of the other circuits, has held that once benefits payments have been disbursed to a beneficiary, creditors may encumber the proceeds."); <u>Hoult</u>, 373 F.3d at 54-55 (holding that once benefits have been distributed to a beneficiary, a creditor's rights are enforceable against that beneficiary). "The same principle is equally applicable here." <u>Estate of Kensinger</u>, 674 F.3d at 138. If a creditor may enforce its rights against a beneficiary once plan proceeds have been distributed, there is no reason why the petitioner in this case should not be able to seek to impose a constructive trust against the respondent's share of the proceeds, which have already been distributed. <u>See id</u>.

Although the respondent relies upon Staelens to support her argument, we agree with the Third Circuit Court of Appeals that Staelens is inapposite to claims such as the respondent's claim here. See Estate of Kensinger, 674 F.3d at 138. In Staelens, the court held that the decedent's estate could not sue the decedent's ex-wife to enforce her purported waiver of her entitlement to plan proceeds. Staelens, 677 F. Supp. 2d at 508-11. However, the court based its decision on the specific language of the couple's separation agreement. Id. at 510-11. Though the court opined, in dicta, that allowing lawsuits to be brought against a plan beneficiary after plan proceeds have been distributed "would appear to go against the various interests which the Supreme Court deemed served by a uniform administrative scheme," it also "acknowledge[d] that the First Circuit itself, pre-Kennedy, appears to have treated distributed funds differently" from funds that had not yet been distributed. Id. at 508; see Hoult, 373 F.3d at 54. Accordingly, "[r]ecognizing what appeared to be the law of the circuit in which it sat, the court avoided the question of whether the estate could sue the ex-wife directly and instead based its decision on narrow grounds related to the specificity of the contract language." Estate of Kensinger, 674 F.3d at 139; see Teves v. Teves, Civil Action No. 13-11162-FDS, 2013 WL 5508246, at *3 (D. Mass. Sept. 27, 2013) ("After benefits have been distributed to the designated beneficiary in accordance with plan documents, . . . ERISA is no longer implicated.").

D. Constructive Trust

The respondent next argues that the trial court "misapplied the law of constructive trust" to the facts of this case. We disagree. "[T]here are no rigid requirements for imposing a constructive trust." In re Estate of McIntosh, 146 N.H. 474, 478 (2001). "[A] constructive trust is merely the formula through which the conscience of equity finds expression." Milne v. Burlington Homes, Inc., 117 N.H. 813, 816 (1977) (quotation omitted). "A constructive trust will be imposed whenever necessary to satisfy the demand of justice." Id.

To support a claim for a constructive trust, the moving party must demonstrate by clear and convincing evidence that such action is warranted. Walsh v. Young, 139 N.H. 693, 695 (1995). To prevail in the instant case, the petitioner had to prove that the respondent possessed the life insurance proceeds at issue, that she and the decedent had a confidential relationship, and that she would be unjustly enriched were she allowed to retain the proceeds. See id. "The basic confidential relationship arises out of the family relationship, where one party is justified in believing that the other party will act in [his] interest." Clooney v. Clooney, 118 N.H. 754, 757 (1978).

The respondent argues that, to recover in this case, the petitioner had to prove what we required of the plaintiffs in Patey v. Peaslee, 101 N.H. 26 (1957). In Patey, the plaintiffs alleged that "knowing that the decedent was possessed

9

of property of substantial value, and was of unsound mind and suffering from physical disabilities from which she would shortly die, the defendant entered into a marriage with her, intending at her death to marry another woman . . . ." Patey, 101 N.H. at 28. The plaintiffs further alleged that in marrying the decedent, "the defendant concealed from her his sole purpose in doing so, which was to become a beneficiary of her estate." Id. In light of those allegations, we held that, to recover, the plaintiffs had to show that the defendant and the decedent had a confidential relationship "in which the defendant occupied a dominant position" and that he used that position, "either by concealment of his purpose or by undue influence, to procure the marriage solely to obtain the decedent's property." Id. at 30. The plaintiffs also had to "prove that the decedent was thereafter incompetent to dispose of her property, so that but for the marriage it would have gone to the plaintiffs by intestacy; or if she was competent, that she would have made no other disposition of it." Id. We held that if the plaintiffs met this burden of proof, the burden of proof would then shift to the defendant "to show that the action by which he obtained title to the property was fair, and taken in good faith." Id.

In Patey, we did not set forth a "rule of law" to be applied generally. Rather, we set forth what was required of the plaintiffs in that case because of the allegations in their complaint. "The Patey case recognized . . . that the equitable principle of imposing a constructive trust rests upon the doctrine that restitution will be compelled to prevent unjust enrichment." Lamkin v. Hill, 120 N.H. 547, 551 (1980). "The specific instances in which equity imposes a constructive trust are numberless, as numberless as the modes by which property may be obtained through bad faith and unconscientious acts." Milne, 117 N.H. at 816. Accordingly, in this case, the trial court properly focused upon whether the circumstances rendered it unconscionable "for the [respondent] to retain and enjoy [her] beneficial interest" in the life insurance proceeds. Id. (quotation and ellipses omitted).

The respondent next asserts that there was insufficient evidence to support the trial court's imposition of a constructive trust. We review such claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. Walker v. Walker, 158 N.H. 602, 608 (2009). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. Id. We view the evidence in the light most favorable to the petitioner. Id.

Viewing the evidence in the light most favorable to the petitioner, we conclude that it supports the trial court's imposition of a constructive trust. The trial court found, and the record supports its finding, that the respondent fraudulently induced the decedent because she married him without telling him of her concurrent relationship with Tamara. For instance, Pastor Wallace

10

Elliot Horton testified that, in approximately 2002, he first met Tamara and the respondent, whom Pastor Horton knew as Tamara's wife, then known as Ellen or Hellen Tamara. The child whom the respondent claims was fathered by the decedent was known to the Pastor as Tamara's child. Indeed, Pastor Horton testified that he presided at a "dedication ceremony" in which Tamara and the respondent participated with the child as her parents. Pastor Horton further testified that before he provided a reference for Tamara to the Northern New England District Council for the Assembly of God church in 2005, he contacted numerous individuals who confirmed that Tamara and the respondent were husband and wife. Pastor Horton testified that throughout his friendship with Tamara, he never doubted that the respondent was Tamara's wife and, until the instant proceeding, he had never heard of the decedent. Although, as the trial court noted, the respondent "steadfastly denied that she was married to, or intimately involved with, . . . Tamara," the trial court found that her testimony "was evasive, nonresponsive and not credible."

The trial court also found, and the record supports its finding, that by concealing her relationship with Tamara, the respondent "was able to deceive the decedent into believing that he was [the] only possible biological father" of the respondent's daughter. The decedent's sister testified that the decedent believed that the respondent's daughter was his child, despite the fact that he had had a vasectomy, and that the respondent convinced the decedent that he had fathered her daughter.

The record also supports the trial court's finding that as a result of the respondent's fraud and deceit, the decedent was not only induced to marry her, but also to designate her as a beneficiary of his life insurance policy. The sister testified that in 2008, while the divorce action was pending, the decedent told her that he now believed that the respondent was "already married" to Tamara. The sister also testified that she believed that the decedent did not change the beneficiary form because he was told that he could not do so while the divorce was pending.

Accordingly, the trial court found, and the record supports its finding, that the decedent and the respondent had a confidential relationship (a marriage) into which the decedent entered because of the respondent's "bad faith, deceit and misrepresentations." The trial court found "by clear and convincing evidence that were the [r]espondent allowed to profit from her misconduct by retaining her beneficial share of the life insurance proceeds, an unjust enrichment would result." Because the record supports the trial court's findings, we uphold its determination that it was necessary to impose a constructive trust to prevent the respondent from being unjustly enriched.

11

E.  Attorney's Fees

The respondent next asserts that the trial court erred when it declined to award her prevailing party attorney's fees.  The respondent did not prevail in the probate division and has not prevailed in this appeal.  Accordingly, the trial court did not err by denying her request for prevailing party attorney's fees.  Although the petitioner argues that the trial court should have awarded him attorney's fees, he did not file a cross-appeal, and, accordingly, this issue is not properly before us.

F.  Ripeness

We briefly address the respondent's argument that the instant case is not ripe for adjudication because it is not clear that the petitioner will ultimately receive the life insurance proceeds now that the trial court has imposed, and we have upheld its imposition of, a constructive trust on them.  However, as the trial court explained when it denied the respondent's motion to dismiss, "[i]f a constructive trust were to be imposed, the beneficiary of these assets would be the person wronged by [the respondent], as determined by the court."  We decline to decide, in the first instance, the identity of "the person wronged by [the respondent]," and remand this issue to the trial court for resolution.

We have reviewed the respondent's remaining arguments and conclude that they do not warrant further discussion.  Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed and remanded.

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.

12