**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2023-0559, <u>Michelle Boucher, individually and as executrix of Estate of Alan C. Gilman v. Estate of Alan C. Gilman & a.</u>, the court on April 16, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The petitioner, Michelle Boucher, both individually and as the executrix of the Estate of Alan C. Gilman, brought multiple actions against the respondents, Lynne R. Gilman and the Estate of Alan C. Gilman. Lynne appeals an order of the Circuit Court (<u>Patten</u>, R., approved by <u>Keating</u>, J.) granting relief sought by Michelle, as executrix, for declaratory judgment and restitution. We reverse.

The following facts are drawn from the trial court's orders or are undisputed by the parties. Denise Gilman and Alan C. Gilman were married in 1980. Michelle is Denise's daughter and is not the biological or adopted daughter of Alan.

In 1986 and 1987, Denise and Alan acquired interests in real property in Madison (the "Madison property") as joint tenants with rights of survivorship. In 1994, Alan and Denise signed identical, mutual wills. The mutual wills made a specific devise of the Madison property to Michelle as the contingent beneficiary if she survived both Denise and Alan. Denise died in 1995.

Lynne began to reside with Alan on the Madison property in 1996, and they married in 1998. Alan and Lynne had an arrangement for the payment of their bills: Alan paid the mortgage, while Lynne paid for household bills including real estate taxes, household repairs, and insurance. On several occasions, Alan, and on one occasion Alan and Lynne, borrowed money from a bank, each time securing the loan with a mortgage on the Madison property. In 2018, Alan conveyed the Madison property by quitclaim deed to himself and Lynne as joint tenants with rights of survivorship.

Alan died in 2020. Michelle filed Alan's will and a petition for probate administration and was appointed as the estate fiduciary. At the time of Alan's death, Lynne did not know that Alan and Denise had executed the mutual wills.

Michelle brought claims in both her individual capacity and as the executrix of Alan's estate. As executrix, Michelle brought actions against Lynne for declaratory judgment and restitution. Individually, Michelle brought an action against Lynne for avoidance of fraudulent transfer. The trial court granted Lynne's motion to dismiss as to the fraudulent transfer count, but otherwise denied Lynne's motion to dismiss and granted Michelle declaratory judgment and equitable relief. In so ruling, it found that Alan and Denise, by express agreement, "contracted to make mutual wills, which became irrevocable after the death of Denise, in order to carry out their common plan as to the manner their property which existed as [of] the date of their agreement was to be disposed of upon the later death of Alan." The trial court further found that the mutual wills were silent as to whether Alan "could or could not make a deed transfer of the property, before or after Denise's death." In answering "whether or not the inter vivos quitclaim deed from Alan to himself and Lynne as joint tenants constitute[d] a breach of the mutual will contract between Alan and Denise," the trial court ruled that "Alan's quitclaim deed was contrary to the duties he had under the implied covenant to act in good faith and to fairly deal with the property subject to the [contract]."

The trial court imposed "a constructive trust on Lynne's possession, use and title claim to the property in favor of Michelle"; "void[ed] the quitclaim deed from Alan to himself and Lynne"; and "rul[ed] that the Madison property is subject to the terms of Alan's 1994 will as an estate asset for probate administration procedures and law." Lynne's motions for clarification and for reconsideration were denied. On appeal, Lynne challenges, among other things, Michelle's standing to sue and the trial court's finding that Alan breached his contract contained in the mutual will with Denise.

We first address Lynne's argument that Michelle lacks standing to sue for breach of contract as the executrix of the estate. We conclude that Michelle has a sufficient interest in these proceedings to have standing. See Conduent State & Local Solutions v. N.H. Dep't of Transp., 171 N.H. 414, 418 (2018).

Although Lynne raises a number of issues on appeal, we need only address whether the trial court erred in finding that Alan's conveyance of the Madison property breached the implied covenant of good faith and fair dealing. Lynne argues that the factual record is insufficient to show that Alan breached the mutual wills or violated the implied covenant of good faith and fair dealing. We agree. Our standard for reviewing probate division decisions is set forth by statute. See RSA 567-A:4 (2019). "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." Id. Consequently, we will not disturb the probate division's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. In re Estate of Couture, 166 N.H. 101, 105 (2014).

2

In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another.  Short v. LaPlante Trs., 174 N.H. 384, 391 (2021).  This case addresses the implied covenant that imposes limits on the exercise of discretion in contractual performance.  See id.  This covenant prohibits behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, as well as with common standards of decency, fairness and reasonableness.  Id. at 391-92.  We will uphold a trial court's determination regarding the breach of the implied covenant of good faith and fair dealing unless it is not supported by the evidence or is legally erroneous.  Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010).

In Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143-44 (1989), we set forth four questions to address when determining whether a party breached the covenant of good faith and fair dealing:

> First, does the agreement "allow . . . or confer upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value?"  Second, did the parties intend "to make a legally enforceable contract?"  Third, "has the defendant's exercise of discretion exceeded the limits of reasonableness?"  Finally, did the defendant's abuse of discretion cause the damage complained of or does the damage "result from events beyond the control of either party, against which the defendant has no obligation to protect the plaintiff?"

Short, 174 N.H. at 392 (quoting Centronics Corp., 132 N.H. at 143-44) (citations omitted).

Resolution of this matter turns on the reasonableness of Alan's transfer of the property to himself and Lynne as joint tenants with rights of survivorship.  Because the mutual wills are silent regarding the surviving spouse's authority to transfer the property, we conclude that Alan had some discretion to dispose of the Madison property.  See Annotation, Right Of Party To Joint Or Mutual Will, Made Pursuant To Agreement As To Disposition Of Property At Death, To Dispose Of Such Property During Life, 85 A.L.R.3d § 19 (1978) ("It is generally held that regardless of the interest given to the survivor in a joint or mutual will, as long as there is no express provision to the contrary, the survivor has power to dispose of the property for necessities, support, and maintenance."); see also Schwartz v. Horn, 290 N.E.2d 816, 819 (N.Y. 1972) ("In no instance . . . would a transfer—whether or not it defeats the purpose of the agreement—be prohibited when the property or its proceeds are used to meet the daily needs of the surviving testator.").  We accordingly disagree with Michelle's argument that Alan lacked discretion to convey the property to himself and Lynne.

3

In the eighth section of the mutual wills, Alan and Denise "declare that this Will is executed pursuant to an agreement between me and my [spouse], wherein we have agreed as to the manner in which all of our property . . . is to be disposed of."  In addition, the wills provided that "after the death of one of us, the survivor will not revoke, modify, or change the Will during the survivor's lifetime."  Given these provisions, we agree with the trial court that Alan and Denise contracted to make mutual wills.  We assume without deciding that to the extent Alan exercised discretion in transferring the property to himself and Lynne, he deprived Michelle of her potential beneficial interest in it.  Thus, we focus our inquiry on whether Alan's exercise of discretion in conveying the property to himself and Lynne exceeded the limits of reasonableness.  See Short, 174 N.H. at 392.  "The answer . . . depends on identifying the common purpose or purposes of the contract, against which the reasonableness of the complaining party's expectations may be measured, and in furtherance of which community standards of honesty, decency and reasonableness can be applied."  Centronics Corp., 132 N.H. at 144.

The language of the mutual wills shows that the common purpose was to dispose of property owned by Alan and Denise at their time of death in an agreed-upon manner.  The mutual wills state: "If I am survived by my [spouse], I make no provision for my children . . . and I give, devise and bequeath all of the rest, residue and remainder of my estate . . . to my said [spouse], [and the spouse's] heirs and assigns forever."  This provision demonstrates that Alan and Denise intended to provide for, not impoverish or restrict, their surviving spouse.  Following the mutual wills' provisions devising the Madison property to Michelle, the wills each state: "It is my hope, without however imposing a trust thereon, that this property will remain in the Gilman family."  These provisions provide context for assessing the reasonableness of Alan's transfer.

We next must measure this common purpose against the reasonableness of Alan's and Denise's justified expectations.  See Birch Broad., 161 N.H. at 198.  Based upon the mutual wills, Denise likely expected that upon the death of Alan, if the property were part of the estate, Michelle would inherit the Madison property.  However, we agree with Lynne that it is unlikely that Alan and Denise agreed to impoverish the surviving spouse for Michelle's benefit.  Similarly, it would be unreasonable to expect that no condition could arise in which the surviving spouse would justifiably need to convey the property.  Since Alan lived for nearly 25 years after Denise's death, it would not be reasonable to expect that Alan maintain the property solely for Michelle's benefit.

We now assess how Alan's conveyance comports with "community standards of honesty, decency and reasonableness."  Centronics Corp., 132 N.H. at 144.  First, there is no evidence that Alan acted in bad faith.  The parties do not dispute that Alan would not have transferred the property into

joint ownership with Lynne if he knew he was not legally able to do so. Second, Lynne's receipt of the property does not violate any community standards because she married Alan and contributed significantly to the Madison property. Since moving into the property in 1996, Lynne took care of the house and of Alan. She and Alan shared expenses such that Alan paid the mortgage and Lynne paid household bills including real estate taxes, household repairs, utilities, and insurance. When Alan obtained a mortgage in 2015, Lynne was a co-borrower because her income was needed to obtain the loan. Since Alan's death, Lynne has continued to pay household bills and obtained a mortgage on the property to prevent it from going into foreclosure. But for Lynne's contributions, Alan may not have been able to maintain the Madison property and may not have owned the property at his death.

We conclude that Alan's conveyance of the Madison property to Lynne did not exceed the limits of reasonableness. See Centronics Corp., 132 N.H. at 144. We thus determine that Alan did not violate the duty of good faith and fair dealing. Accordingly, the trial court's finding to the contrary is plainly erroneous. See In re Estate of Couture, 166 N.H. at 105. Having so concluded, we need not address the trial court's imposition of a constructive trust.

Reversed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

5